**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMY MILLETT-LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. _____ |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| COLONIAL SCHOOL DISTRICT; | ) | |
| THE BOARD OF EDUCATION, | ) | |
| COLONIAL SCHOOL DISTRICT; | ) | |
| DUSTY BLAKEY, INDIVIDUALLY | ) | |
| AND IN HER OFFICIALCAPACITY | ) | |
| AS SUPERINTENDENT COLONIAL | ) | |
| SCHOOL DISTRICT | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

## INTRODUCTION

1.      Plaintiff, Millett-Lee ("Plaintiff" or "Millett-Lee"), files this action against Defendant Colonial School District, ("Defendant" or "Colonial"); The Board of Education of the Colonial School District ("Defendant Board"); and Dusty Blakey, Superintendent of Colonial School District for back pay, front pay, compensatory damages, punitive damages and attorneys' fees for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., the Delaware Persons with Disabilities Employment Protections Act,  19 *Del. C*. § 720, *et seq.,* and the Family Medical Leave Act 29 U.S.C. §§ 2611 *et seq.*

## NATURE OF THE ACTION

2.      Defendant Colonial employed Plaintiff for nearly 5 years.

3.      Defendant engaged in disability discrimination and wrongfully discriminated against Plaintiff by virtue of her disability, in violation of the Americans with Disabilities Act of

1990, 42 U.S.C. §12101 *et seq*., and the Delaware Persons with Disabilities Employment Protections Act, 19 *Del. C.* § 720, *et seq*.

4.    Defendant retaliated against Plaintiff by virtue of her taking protected medical leave, in violation of the Family Medical Leave Act ("FMLA") of 1993, as amended, 29 U.S.C. § 2601 *et seq*.

## JURISDICTION

5.    This Court has federal question jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331.

6.    This Court has supplemental jurisdiction over all state causes of action pursuant to 28 U.S.C. §1367.

7.    Venue is proper in this district pursuant to 29 U.S.C. § 1331, as well as 28 U.S.C. § 1391(b).

## PARTIES

8.    Plaintiff is a resident of Middletown, Delaware, who at all times relevant to this Complaint was an employee of Defendant Colonial.

9.    Defendant Colonial School District ("Defendant Colonial") is located at 318 East Basin Road, New Castle, Delaware 19720, and is subject to service of process at that same address.

10.    Defendant Board of Education of the Colonial School District is located at 318 East Basin Road, New Castle Delaware 19720.

11.    Defendant Dusty Blakey is the Superintendent of Colonial School District having her principal place of business at 318 East Basin Road, New Castle Delaware 19720.

## ADMINISTRATIVE PROCESS

12.     On May 31, 2016, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination against Defendant Colonial School District.

13.     On July 24, 2018, Plaintiff received a "Dismissal and Notice of Rights" from the EEOC, attached hereto as *Exhibit A*.

14.     Plaintiff has filed this action under the ADA within ninety (90) days after receipt of her Right to Sue Notice from the EEOC.

15.     Plaintiff has satisfied all statutory prerequisites for filing this action.

## FACTS

16.     Prior to Plaintiff's wrongful termination, she was employed with Defendant Colonial since August of 2011, as an Early Childhood Special Education Teacher.

17.     During the 2011-2012 school year, Plaintiff worked as a part time classroom teacher, part time itinerant teacher. During this time, Plaintiff had six to eight children in her classroom in the morning four days a week.

18.     During the 2012-2013 school year, Plaintiff was assigned to a classroom at the beginning of the year for a half day class and was switched to itinerant teaching only in November 2012. At this time and in the position of classroom teacher, Plaintiff began to experience pain in connection with her disability.

19.      Plaintiff did not say anything about her disability as she knew she was leaving the classroom position and would be working in the less physically demanding position of itinerant teacher. Plaintiff also did not want to disclose her disability as she feared retaliation from Colonial.

20.     For the 2013-2014 and 2014-2015 school year, Plaintiff held the position of itinerant teacher on a full-time basis.

21.     Plaintiff was very passionate about the itinerant program and wanted to continue collaborating with the daycare partners she had worked with for years.

22.     On Plaintiff's April 21, 2015 questionnaire provided by the District to all teachers, Plaintiff stated she desired the itinerant position first in accordance with the requirement to rank their preferred jobs from one to three.

23.     The itinerant position is not as physically demanding as the classroom position. A teacher in an itinerant position works with 1 to 2 children compared to a classroom teacher who works with over twenty students.

24.     The itinerant position involved, *inter alia*, classroom observations, consulting with parents and teacher to identify students' goals, traveling to different day cares, IEP Implementation, visual aid preparation and afternoon office work.

25.     Despite Plaintiff's stated desire to be placed in the itinerant position, on May 1, 2015, Plaintiff was informed she was being switched to a full-time classroom teacher for the 2015-2016 school year.

26.     Plaintiff became concerned she would not physically be able to perform in the role of full-time classroom teacher due to her disability.

27.     Plaintiff suffers from Fibrous Dysplasia in the head and neck of her femur bone, which affects her ability to squat, bend, perform repetitive movements of the hip, perform sudden quick movements, and affects her ability to sit and stand for extended periods of time. Her disability also prevents her from lifting more than 20 pounds.

28.     Due to her experience in a classroom setting, Plaintiff knew she could not physically handle the preschool special education classroom position as it consisted of morning and afternoon classes of special needs students and required constant motion and need to react quickly which would be inhibited by the hole in her left femur.

29.     Plaintiff was well aware of the physical demands and constant motion needed to react quickly in the preschool special education classroom.

30.     Plaintiff was concerned that her disability could possibly put her and her students at risk because of the physical demands of the classroom teacher position and the limitations her disability was causing.

31.     It was with this knowledge of the classroom, the students, and physical demands of the job that Plaintiff decided to disclose her disability to Colonial.

32.     From the outset, Defendants failed to engage in the interactive process with Plaintiff, which is mandated by the Americans with Disabilities Act.

33.     Plaintiff immediately emailed the principal and assistant principal to advise them of her disability and related concerns with performing in the classroom position.

34.     Plaintiff met with Principal Beasley on May 4, 2015. During this meeting, Ms. Beasley told Plaintiff "if you have something wrong with you then you shouldn't be here." Ms. Beasley went on further to tell Plaintiff she needed to get a doctor's note in order to continue working for the rest of the school year.

35.     In fear of losing her job, Plaintiff scheduled an emergency appointment with her Orthopedic Surgeon on May 6, 2015 and obtained a doctor's note.

36.    The doctor's note stated Plaintiff is being followed/seen for fibrous dysplasia of her left hip. The doctor stated she could not squat repetitively or run but can continue work in her position of itinerant teacher.

37.    Plaintiff presented this doctor's note identifying her disability as Fibrous Dysphasia and associated limitations to Principal Beasley.

38.    Upon receipt of the doctor's note, Ms. Beasley and Ms. Fleetwood concluded without any further documentation, questioning, or investigation that Plaintiff could perform the classroom position as both jobs had "similar responsibilities" and "the itinerant job demanded more physical responsibilities."

39.    Neither Ms. Beasley or Ms. Fleetwood have ever observed an itinerant teacher perform their job.

40.    The itinerant position should be classified as a sedentary light position and the classroom position should be classified  as a medium duty position.

41.    The classroom position requires lifting, moving, and carrying children, as well as bending, stooping, squatting, kneeling, crouching, and crawling. Additionally, a classroom teacher may need to move and push wheelchairs for children and must be able to lift and carry 20 to 50 pounds.

42.    The itinerant position does not necessitate lifting over 20 pounds and allows a teacher to sit, stand and move while engaging with students.

43.    After Plaintiff gave Ms. Beasley the May 6, 2015 doctor's note, Plaintiff asked her "what if I was in a wheelchair?" Ms. Beasley responded "then you wouldn't work for Colonial."

44.    Plaintiff provided the District with another doctor's note dated May 29, 2015, which again stated she was being treated for fibrous dysplasia and listed her limitations. Plaintiff

did not receive any response from the District nor did the District discuss with her anything in regards to her disability.

45.     Plaintiff again provided the District with a doctor's note on August 10, 2015, stating accommodations should be afforded to her by placing her in a position creating the least amount of hip stress.

46.     In response, the District responded "of course, the classroom to which she was assigned would create significantly less hip stress than would the itinerant position." Defendants made this decision again, without firsthand knowledge of the less physically demanding position of the itinerant position, as no one in the Administration in Colonial was able to make this determination that the classroom position would cause less hip stress.

47.     The itinerant position involved driving to different day care centers, various consultations, and afternoon sedentary office work.

48.     In the itinerant position, Plaintiff would only have one to two students on a typical day, compared with twenty-two or more special needs students in the Colonial classroom.

49.      Plaintiff knew from firsthand experience working as a classroom teacher that the classroom position was more physically demanding than the itinerant position. Therefore, the itinerant position was less physically demanding and more suitable for Plaintiff and her disability.

50.     Plaintiff repeatedly provided the District with medical documentation in an attempt to provide them with information showing them she was able to perform the essential functions of the early childhood special education teacher position with an accommodation.

51.     Defendant Colonial ignored Plaintiff, thereby failing to engage in the interactive process.

52.    Plaintiff was never given the chance to explain her disability and was told she had to be in the classroom no matter what.

53.    The day before school started Defendant offered Plaintiff a rolling stool and frequent breaks as a purported accommodation.

54.    The proposed accommodation offered by Defendant failed to assist Plaintiff in performing the essential functions of the classroom teacher position and in fact would have made the classroom situation even more dangerous.

55.    Due to Defendants denial of Plaintiff's accommodation request and fear of losing her job, and putting her students at risk, Plaintiff requested to go out on short term disability, because her request for an accommodation to work in the itinerant position was denied.

56.    Plaintiff was granted FMLA from August 18, 2015, until November 16, 2015.

57.    Colonial provided Plaintiff with FMLA paperwork that indicated she could only return to work without restrictions.

58.    Colonial School District's Leave of Absence Options Forms states in number 9 "need note from the doctor that you can return to work on (date) without restrictions. Must be received BEFORE returning to work and cannot be less than two weeks old."

59.    Plaintiff was ultimately terminated because of her disability as she could not return to a classroom teacher position without an accommodation.

60.    Defendant failed to provide a non-discriminatory reason as to why granting Plaintiff's accommodation request would pose an undue hardship on the organization.

61.    Defendant denied Plaintiff's accommodation request of allowing her to continue in the itinerant position.

62.     Even though Plaintiff suffered from a disability she was able to perform the essential functions of her position as an itinerant teacher.

63.     Plaintiff has suffered physical, emotional and economic damage as a result of the aforementioned conduct which exposes Defendants to liability under the ADA and FMLA.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendants:

### COUNT I
**Discrimination in Violation of the Americans with Disabilities Act of 1990,
42 U.S.C. §12101 *et seq*. & the Delaware Persons with Disabilities Employment
Protections Act, 19 *Del. C.* § 720 *et. seq.***

64.     The allegations of Paragraphs 1 through 63 are incorporated by reference as if fully restated herein.

65.     Defendant Colonial employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 12111(3).

66.     At all times relevant hereto, Plaintiff was employed by Defendant Colonial and is an "Employee" as defined by 42 U.S.C. § 12111(4).

67.     Plaintiff received a Right to Sue letter from the EEOC on July 24, 2018.  Plaintiff has satisfied all statutory prerequisites for filing this action.

68.     Colonial was required to determine Plaintiff's rights when she requested to stay in the position of itinerant teacher due to her disability.

69.     They were further required to initiate an informal, interactive process with her "[to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

70.     But instead of working with her, they punished her for her disability. Fibrous Dysplasia severely limited Plaintiff's major life activity of working because of her inability to squat, bend, lift, perform repetitive movements of the hip, perform sudden quick movements, which affects her ability to sit and stand for extended periods of time.

71.     Plaintiff provided numerous medical documents regarding her limitations from her disability and further tried to engage in conversations with Colonial regarding the details of her disability from May 26, 2016, until her termination. Plaintiff was ignored at every turn.

72.     Plaintiff was disabled as defined under the ADA.

73.     Plaintiff is a "qualified individual" who could perform the essential functions of an Early Childhood Special Education Teacher within Colonial School District, provided she was given the reasonable accommodation she sought, namely the position of itinerant teacher.

74.     On the matter of Plaintiff's requests for accommodation, those requests as written together with the documentation prepared by her doctor shows she was able to perform the essential functions of her position with an accommodation.

75.     Plaintiff never stated to Colonial she was not able to perform her job. Her only accommodation was that she remain in the itinerant position.

76.     She submitted the appropriate doctor's notes and documentation to support her requests, but Colonial still denied her the requested accommodation in violation of the ADA.

77.     Providing the accommodation to Plaintiff was reasonable, as Plaintiff was working in the position of itinerant teacher when she requested the accommodation to remain in that position.

78.     Defendant has not stated an undue hardship it would have suffered by allowing Plaintiff to stay in the itinerant position.

79.     Defendant failed to engage in the interactive process, failed to accommodate her, and then terminated her from her position.

80.     Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, as well as punitive damages and attorneys' fees.

**COUNT II**
**Violations of the Family Medical Leave Act,**
**29 U.S.C. § 2601 *et seq*. ("FMLA")**

81.     The allegations of paragraphs 1 through 80 are fully incorporated by reference as if fully restated herein.

82.     Defendant employs fifty or more employees and is an "Employer" as defined by 29 U.S.C. § 2611 (4).

83.     At all times relevant hereto, Plaintiff was employed by Defendant and is an "Eligible Employee" as defined by 29 U.S.C. § 2611 (2).

84.     "Leave" under the Act shall be granted to a qualified employee for any of the following reasons: …"to care for an employee's spouse, son, daughter, or parent who has a serious health condition; or for a serious health condition that renders employees unable to perform their job." 29 U.S.C. § 2612.

85.     Qualified employees are permitted 12 weeks or 480 hours of leave. Further, this leave can be "intermittent" or "continuous." 29 U.S.C. §2612(b). The FMLA states, [e]xamples of intermittent leave would include leave taken on an occasional basis for medical appointments or leave taken several days at a time spread over a period of six months. 29 C.F.R. § 825.202(b)(1).

86.     Thus, Plaintiff's actions and requests for leave were in direct accordance with her rights under the FMLA. Under 29 U.S.C. § 2615(a), it is "unlawful for any employer to discharge

or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA, and it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA.

87.    Colonial provided Plaintiff with FMLA paperwork which indicated she could only return to work without restrictions.

88.    Plaintiff was terminated because of disability as she could not return to a classroom teacher position without an accommodation.

89.    Defendant has at all times herein, continuously and willfully, or with reckless disregard, violated, and continued to willfully, or with reckless disregard, violated the FMLA and applicable regulations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

A.  Declare the conduct by Defendant to be in violation of Plaintiff's statutory rights and common law rights.

B.  Awarding Plaintiff any and all consequential damages, including, but not limited to lost wages, salary, employment benefits, back pay, front pay, pre and post judgement interest, equity, liquidated damages, and any or all pecuniary damages.

C.  Awarding Plaintiff all compensation due as a result of Defendant's violations herein.

D.  Awarding Plaintiff an equal and additional amount as liquidated damages.

E.  Awarding Plaintiff costs and reasonable attorney's fees.

F.   Awarding Plaintiff pre and post judgment interest at the legal rate.

G.   Any and all such other relief as the Court deems appropriate under the circumstances.

**LAW OFFICES OF**
**MICHELE D. ALLEN, LLC**
*/s/ Michele D. Allen* _____
Michele D. Allen (#4359)
Caitlyn E. Quinn (#6319)
724 Yorklyn Road, Suite 310
Wilmington, DE 19707
302-234-8600
302-234-8602 (fax)
michele@micheleallenlaw.com
*Attorneys for Plaintiff*

Dated: October 22, 2018.